

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-24-00373-CR

---

**ROBERTO ALBA RIVERA, APPELLANT**

V.

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the Criminal District Court 3
Tarrant County, Texas[1]
Trial Court No. 1804950, Honorable Brian Bolton, Sitting by Assignment

---

August 25, 2025

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Appellant Roberto Alba Rivera's four felony convictions stem from a traffic stop and search of his vehicle.[2] In this appeal, he challenges the denial of his motion to

---

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Second Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001. Should a conflict exist between precedent of the Second Court of Appeals and this Court on any relevant issue, this appeal will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[2] Appellant was convicted of manufacture or delivery of a controlled substance in penalty group 1B—Fentanyl, Methamphetamine, and Cocaine (Count 1); two counts of manufacture or delivery of a controlled substance in penalty group 1—Fentanyl, Methamphetamine, and Cocaine (Counts 2, 3); and

suppress the evidence seized in the search of his vehicle contending that the officer lacked reasonable suspicion for the stop. We affirm the judgment of the trial court.[3]

## BACKGROUND

At a pre-trial hearing, the trial court heard testimony from Arlington police officer Jose Camacho pertaining to the events relevant to Appellant's motion to suppress. The State also introduced into evidence the dashcam video from the patrol car which captured the stop. The parties stipulated that it was a warrantless arrest.

Officer Camacho testified that, as a patrol officer, he had conducted approximately 1,000 traffic stops. Around 7:00 p.m. on June 27, 2022, he and his partner were patrolling a high-crime area. After seeing Appellant's vehicle leave a corner store's parking lot, Officer Camacho observed him drive on the solid double yellow line in the center of the roadway. Officer Camacho activated his emergency lights and then observed Appellant crossing the double yellow lines while making a left-hand turn. After the officer stopped the vehicle, he approached the driver's side window and immediately detected an odor of marijuana emanating from the vehicle. Upon searching Appellant's vehicle, the officer found a firearm, $1,199 in cash, notes of drug transactions, and what subsequent testing confirmed to be fentanyl, methamphetamine, and cocaine.

---

unlawful possession of a firearm by a felon (Count 7). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(c), .1123(d); TEX. PENAL CODE ANN. § 46.04.

[3] Appellant's punishment range was enhanced based on his status as a habitual offender (Counts 1–3) and a repeat offender (Count 7). *See* TEX. PENAL CODE ANN. § 12.42. The trial court entered judgment consistent with the jury's recommended punishment: Count 1 at 30 years' confinement; Count 2 at 25 years' confinement; Count 3 at 25 years' confinement; and Count 7 at 20 years' confinement.

In denying the motion to suppress, the trial court found the officer credible and noted that Appellant drove his vehicle in an unsafe manner because of other vehicles on the roadway. The court stated, "when [Appellant's] vehicle did cross over, broke the plane, and left its lane of traffic into the double yellow lines, I'm going to find that was a reason to articulate a reasonable suspicion to conduct a traffic stop."

## STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence using a bifurcated standard. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) (en banc). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State,* 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673. But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Id.*

When, as here, there are no explicit fact findings and neither party timely requested findings and conclusions from the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's rulings, supports those findings. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008); *see Wiede,* 214 S.W.3d at 25. We then review the trial

court's legal ruling de novo unless the implied fact findings supported by the record are also dispositive of the legal ruling. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006).

## APPLICABLE LAW

A warrantless traffic stop is analogous to a temporary detention, and like all Fourth Amendment seizures, it must be justified by reasonable suspicion. *State v. Hardin*, 664 S.W.3d 867, 872 (Tex. Crim. App. 2022); *see* U.S. CONST. amend. IV. Reasonable suspicion exists if the officer "has specific articulable facts that, combined with rational inferences from those facts," lead the officer to reasonably conclude that a person has committed a traffic offense. *Hardin,* 664 S.W.3d at 872. We review a reasonable suspicion determination by considering the totality of the circumstances. *State v. Cortez*, 543 S.W.3d 198, 204 (Tex. Crim. App. 2018). An actual violation does not need to have occurred; rather, it is only necessary that the officer had a reasonable suspicion that a violation occurred. *Jaganathan v. State*, 479 S.W.3d 244, 247 (Tex. Crim. App. 2015). A seizure for Fourth Amendment purposes does not occur until after a person has been stopped, either physically by law enforcement or by yielding to law enforcement authority. *Johnson v. State*, 912 S.W.2d 227, 236 (Tex. Crim. App. 1995) (en banc).

## ANALYSIS

In his sole issue on appeal, Appellant asserts that the trial court abused its discretion when it overruled his motion to suppress and found the officer had reasonable suspicion to believe Appellant had violated section 545.051 or 545.060 of the Transportation Code. *See* TEX. TRANSP. CODE ANN. §§ 545.051, .060. Because the

4

record shows specific articulable facts from which the officer could have reasonably concluded that Appellant committed an offense under section 545.060, we overrule his issue.[4]

As relevant here, a person commits a traffic offense if, while driving on a multi-lane roadway, the person fails to "drive as nearly as practical entirely within a single lane" and his "move[ment] from the lane" is unsafe. TEX. TRANSP. CODE ANN. § 545.060(a). Section 545.060(a) is violated if the person "fails to maintain a single marked lane of traffic in an unsafe manner." *Hardin,* 664 S.W.3d at 876.

The evidence in this case supports the trial court's finding that the officer had reasonable suspicion to stop Appellant for a traffic violation. At the suppression hearing, Officer Camacho testified that he first noticed Appellant's vehicle as it exited a corner store parking lot. The road had two lanes in each direction with solid double-yellow lines in the center of the road. The officer observed Appellant driving on the double yellow lines. According to the officer, the driver's side tires were on top of the double yellow lines. This movement occurred just prior to Appellant approaching a red light. After the officer activated his overhead lights, Appellant signaled a left turn and crossed the double yellow lines to make a left turn off the roadway. In this instance, Appellant maneuvered into a turn lane designated for oncoming traffic before entering the center turn lane which allows left turns by either direction of traffic. Appellant then completed his turn off the

_____

[4] Because we conclude the trial court did not err by determining Officer Camacho had reasonable suspicion to initiate a traffic stop based on Appellant's failure to maintain a single marked lane of traffic in a safe manner, we need not address the portion of Appellant's issue challenging the justification for the stop under section 545.051 of the Transportation Code. TEX. R. APP. P. 47.1.

roadway and stopped in a parking lot. The officer described Appellant's movement across the double yellow lines as he began his left turn as unsafe.

Appellant contends that Officer Camacho's statement about the movement being unsafe was conclusory and the officer did not articulate specific facts establishing that the driving was unsafe. However, a video recording of the traffic stop, taken from the patrol vehicle's dashboard camera, was admitted into evidence. The video depicted Appellant's car being followed and corroborated the officer's description of the events. The video showed multiple vehicles on the road, including an oncoming motorcycle, van, and small SUV approaching Appellant's vehicle as he moved across the double yellow lines to make his turn. As such, the "officer's failure to relate every minute detail of the video did not render his testimony conclusory." *See Adams v. State,* No. 02-24-00249-CR, 2025 Tex. App. LEXIS 3903, at *7 (Tex. App.—Fort Worth, June 5, 2025, pet. filed) (mem. op., not designated for publication). The trial court is permitted to draw inferences, such as safety concerns, from the video and facts presented. *Id.* Moreover, at the conclusion of the suppression hearing, the trial judge's remarks make clear he found Officer Camacho credible. We are to defer to that determination. *See Wiede*, 214 S.W.3d at 24–25.

On the record in this case, viewed in the light most favorable to the trial court's ruling, we conclude the officer had objective facts and rational inferences from those facts to support a reasonable suspicion of a violation of section 545.060 of the Transportation Code.

**CONCLUSION**

We conclude the trial court did not abuse its discretion by denying Appellant's motion to suppress. We overrule his issue on appeal and affirm the trial court's judgment.


Judy C. Parker
Justice

Do not publish.